**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
--------------------------------------------------------------------------X
PAUL CRAIG WORRALL,
EMILY LONGMIRE,
JAZMIN WITHERSPOON,                                    **21-cv-2602**
COLLIN GINEBAUGH,
and KESSYN ALAN *on behalf of*
*themselves and those similarly situated*,            **CLASS ACTION COMPLAINT**

                          *Plaintiffs*,            *Jury Trial Requested*

           -against-

TIMOTHY LOVE,
LOVE STYLE INC,
LDWB KNOX LLC d/b/a LONESOME
DOVE WESTERN BISTRO,
RIVER SHACK LLC d/b/a WOODSHED
SMOKEHOUSE, and
LOVE MANAGEMENT INC.,

                      *Defendants*.
--------------------------------------------------------------------------X

Plaintiffs Emily Longmire, Jazmin Witherspoon, Collin Ginebaugh, Paul Craig Worrall,

and Kessyn Alan (collectively, "Plaintiffs") by their counsel, The Harman Firm, LLP, allege for

their Complaint against Timothy Love ("Tim Love"), Love Style Inc ("Love Style"), Love

Management, Inc. ("Love MGMT"), LDWB Knox LLC d/b/a Lonesome Dove Western Bistro

("Lonesome Dove"), and River Shack LLC d/b/a Woodshed Smokehouse ("River Shack"),

(collectively, "Defendants") as follows:

**NATURE OF THE ACTION**

1.      The Families First Coronavirus Response Act ("FFCRA"), 29 U.S.C. §§ 201 *et seq.*

helped the United States combat the workplace effects of Covid-19 by reimbursing American

private employers with fewer than 500 employees when their employees needed sick leave. The

1

reimbursement was a dollar-for-dollar tax credit for the cost of providing employees with mandatory paid leave taken for specified reasons related to Covid-19.  The law enabled employers to keep their workers on their payrolls, while at the same time ensuring that workers are not forced to choose between their paychecks and the public health measures needed to combat the virus.

2.      This class action alleges that Defendants represented to the Internal Revenue Service ("IRS") that it paid Plaintiffs and the putative Class Members, defined below, sick leave under FFCRA ("Covid-19 Pay") when in reality, they had not.  Defendants received a dollar-for-dollar tax credit for these nonexistent payments, and Plaintiffs and the putative Class Members paid the IRS taxes in excess of what they earned.  Plaintiffs and the putative Class Members bring this class action to recover their excess IRS payment, under 26 U.S.C. § 7434.

3.      Furthermore, the damages "include a finding of the correct amount which should have been reported in the information return."  26 U.S.C. § 7434(e).

4.      A copy of this Complaint will be provided to the IRS upon its filing, as required under 26 U.S.C. § 7434(d).

## JURISDICTION AND VENUE

5.      Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under the FFCRA and 26 U.S.C. § 7434.

6.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Northern District of Texas, as it is a judicial district in which one of the Defendants resides, a substantial part of the events giving rise to these claims occurred, and a Defendant is subject to the Court's personal jurisdiction with respect to this action.

## TRIAL BY JURY

7.      Plaintiff respectfully requests a trial before a jury.

## PARTIES

**Plaintiff Emily Longmire**

8.      Longmire is a resident of Natrona County in the State of Wyoming.

9.      Longmire was employed at the Lonesome Dove restaurant in Knoxville, Tennessee.

10.     Lonesome Dove and Love Style represented to IRS that it had paid Longmire $2598.66 for taking sick leave due to Covid-19 in 2020.  Longmire never received any payment for Covid-19 sick leave, was not eligible for Covid-19 leave, and did not take Covid-19 leave. Lonesome Dove and Love Style falsely reported these payments to the IRS and Longmire was responsible for paying taxes on these false payments.

**Plaintiff Jazmin Witherspoon**

11.     Plaintiff Jazmin Witherspoon is a resident of Knox County in the State of Tennessee.

12.     Witherspoon was employed at the Lonesome Dove restaurant in Texas.

13.     Lonesome Dove and Love Style represented to IRS that it had paid Witherspoon $1155.95 for taking sick leave due to Covid-19 in 2020.  Throughout 2020, Witherspoon never received any payment for Covid-19 sick leave, was not eligible for Covid-19 leave, and did not take Covid-19 leave.  Lonesome Dove and Love Style falsely reported these payments to the IRS and Witherspoon was responsible for paying taxes on these false payments.

**Plaintiff Paul Craig Worrall**

14.     Worrall is a resident of Denton in Dallas County in the State of Texas.

15.     Worrall was employed at the River Shack restaurant in Texas.

3

16.     River Shack and Love Style represented to IRS that it had paid Worrall $2596.16 for taking sick leave due to Covid-19 in 2020.  Throughout 2020, Worrall never received any payment for Covid-19 sick leave, was not eligible for Covid-19 leave, and did not take Covid-19 leave.  River Shack and Love Style falsely reported these payments to the IRS and Worrall was responsible for paying taxes on these false payments.

**Plaintiff Collin Ginebaugh**

17.     Plaintiff Collin Ginebaugh is a resident of Blount County in the State of Tennessee.

18.     Ginebaugh was employed at the Lonesome Dove restaurant in Knoxville, Tennessee.

19.     Lonesome Dove and Love Style represented to IRS that it had paid Ginebaugh $2113.83 for taking sick leave due to Covid-19 in 2020.  Ginebaugh never received any payment for Covid-19 leave, was not eligible for Covid-19 leave, and did not take Covid-19 leave. Lonesome Dove and Love Style falsely reported these payments to the IRS and Ginebaugh was responsible for paying taxes on these false payments.

**Plaintiff Kessyn Alan**

20.     Plaintiff Kessyn Alan is a resident of Knox County in the State of Tennessee.

21.     Alan was employed at the Lonesome Dove restaurant in Knoxville, Tennessee.

22.     Lonesome Dove and Love Style represented to IRS that it had paid Alan $2025.02 for taking sick leave due to Covid-19 in 2020.  Alan never received any payment for Covid-19 leave, was not eligible for Covid-19 leave, and did not take Covid-19 leave.  Lonesome Dove and Love Style falsely reported these payments to the IRS and Alan was responsible for paying taxes on these false payments.

**Defendant Timothy Love**

23.     Upon information and belief, at all times relevant hereto, Timothy Love ("Tim Love") is a resident of Tarrant County in the State of Texas and a "celebrity" chef.

24.     Upon information and belief, Love is the founder and Chief Executive Officer of Love Style and Love MGMT and controls Love Style and all of its subsidiaries and affiliates, including Defendants Love MGMT, Lonesome Dove, and River Shack.

25.     Upon information and belief, Love participated in and/or directed the decision to fraudulently report to the IRS that Defendants paid its employees paid sick leave under the FFCRA without actually paying it to its employees.

**Defendant Love Style Inc**

26.     Upon information and belief, at all times relevant hereto, Love Style Inc ("Love Style") is the umbrella company for several restaurants, including The Lonesome Dove, River Shack, Love Shack, White Elephant Saloon, Queenie's, and Tim Love Catering.

27.     Love Style's headquarters is located at 713 N Main St, Fort Worth, Texas 76164, and it is organized under the laws of the State of Texas.

28.     Upon information and belief, Love Style provides its subsidiaries and affiliates the human resources services directly at issue in this action, i.e., the decision to fraudulently report to the IRS that it had paid its employees paid sick leave under the FFCRA without actually paying it to its employees.  Upon information and belief, these decisions were made from Love Style's headquarters in Texas.

**Defendant Love Management, Inc.**

29.     Upon information and belief, at all times relevant hereto, Love Management's ("Love MGMT") headquarters is located at 713 N Main St, Fort Worth, Texas 76164, and it is organized under the laws of the State of Texas.

30.     Tim Love is the Chief Executive Officer of Love MGMT which holds the rights to the "award winning brands" such as "Lonesome Dove Western Bistros in Ft. Worth & Austin, TX and Knoxville TN. Woodshed Smokehouse in Ft. Worth & Houston, TX."

**Defendant LDWB Knox LLC  d/b/a Lonesome Dove Western Bistro**

31.     Upon information and belief, at all times relevant hereto, LDWB d/b/a Lonesome Dove Western Bistro ("Lonesome Dove") has a principal place of business located at 100 N Central St, Knoxville, Tennessee 37902, a headquarters location at 713 N Main St, Fort Worth, Texas 76164, and is organized under the laws of the State of Tennessee.

32.     The Lonesome Dove in Knoxville is chef Tim Love's "third flagship."

**Defendant River Shack d/b/a Woodshed Smokehouse**

33.     Upon information and belief, at all times relevant hereto, River Shack d/b/a Woodshed Smokehouse ("River Shack") has a principal place of business at 3201 Riverfront Dr, Fort Worth, Texas 76107, a headquarters location at 713 N Main St, Fort Worth, Texas 76164, and is organized under the laws of the State of Texas.

34.     River Shack "is Chef Tim Love's homage to all things grilled, roasted, and slow-cooked."

## CLASS ACTION ALLEGATIONS

35.     Pursuant to Rule 23, Plaintiffs seeks to prosecute their claims as a class action on behalf of themselves and other individuals as follows:

**Class:** All employees of Defendants from between on April 1, 2020 through December 31, 2020, residing in the United States (including all territories and political subdivisions of the United States) who Defendants reported to the IRS had received paid sick leave payments under the FFCRA but did not actually receive those payments (the "Class").

36.     **Numerosity. FED. R. CIV. P. 23(a)(1).** The members of the Class (the "Class Members") are so numerous that joinder of all members is impractical.  The names and addresses of the Class Members are identifiable through documents maintained by Defendants, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.  Over 300 people were employed by Defendants during the time frame in the class definition all of whom Defendants reported to the IRS had received paid sick leave payments under the FFCRA.  As such, it is reasonable that there would be at least 50 Class Members.

37.     **Existence and Predominance of Common Questions of Law and Fact.  FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

   a.   Whether Defendants represented to the IRS that they had paid their employees sick leave under the FFCRA;

   b.   Whether Defendants actually paid their employees sick leave under the FFCRA;

   c.   Whether Defendants acted willfully in disregard of the rights of the Class Members; and

   d.   Whether Defendants had taken any steps to comply with the FFCRA.

38.     **Typicality.  FED. R. CIV. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of Class Members.

39.     **Adequacy.  FED. R. CIV. P. 23(a)(4).**  Plaintiffs are an adequate representative of the class because their interests coincide with, and are not antagonistic to, the interests of the Class Members they seek to represent; they have retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously. The interests of Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

40.     **Superiority.  FED. R. CIV. P. 23(b)(3).**  Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for the Class Members individually to redress effectively the wrongs done to them.  Even if the Class Members themselves could afford such individual litigation, it would be an unnecessary burden on the Courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

## STATEMENT OF FACTS

41.     From April 1, 2020, to December 31, 2020, the FFCRA mandated that employers give employees two weeks off work at their normal pay rate for specified reasons related to Covid-19.

42.     Upon information and belief, Love Style recognized, in early December 2020, that the time to claim Covid-19 Pay was ending.

43.     Defendants then claimed that all of their employees, at every restaurant and every entity, were paid their Covid-19 pay for qualifying "leave" by Defendants.

44.     Upon information and belief, Tim Love and Love Style knew that not every employee of every restaurant contracted Covid-19.

45.     Upon information and belief, Melinda Morgan, Human Resources & Payroll Manager at Love Style, and Tim Love designed a scheme whereby the various restaurants would wrongfully report that their employees took Covid-19 related leave, claim the FFCRA relief tax credit, fail to actually make any payment to any employee, fail to give any employee leave, and then effectively limit their own tax expenses with the FFCRA credit.

46.     Tim Love and Morgan designed a scheme to defraud the IRS and Love Style employees to gain unearned tax reimbursements by claiming employees received Covid-19 Pay as a wage which they were never given.

47.     Plaintiffs were all hired by various entities which are controlled by Tim Love and Love Style.

48.     Tim Loves owns Love Style, and he is known to be very "hands on" and personally invested in the day-to-day operates of all the restaurants attached to his name.

49.     Tim Love has been very open about his involvement with his restaurants and applicable use of Covid-19 funds; he has made numerous statements to the press about his efforts to extend the first rounds of Paycheck Protection Payment Loans ("PPP Loan").

50.     Furthermore, upon information and belief, all of the Love Style restaurants mentioned above applied for and received PPP Loans under the direction of Tim Love.

51.     Therefore, despite Plaintiffs' respective employment locations, they are all effectively employees of Tim Love and Love Style.

**Plaintiff Emily Longmire**

52.     Plaintiff Emily Longmire began her employment at the Lonesome Dove restaurant on November 13, 2019.

53.     In late December 2020, Longmire and a number other employees noticed irregularities in their Paylocity accounts.

54.     Notably, they all had been allegedly paid Covid-19 Pay.

55.     Though their pay stubs reflected this, no employee actually received the purported payment.

56.     Following this discovery, a number of Lonesome Dove employees approached Longmire, who expressed concerns and frustration about both not being paid the full amount on their pay stub and about paying increased taxes due to the Covid-19 Pay.

57.     Once a growing number of disgruntled employees pressed Longmire, she brought the issue to Morgan.

58.     Morgan told Longmire not to worry, that the paystub reflected "insurance," and that she would handle everything.

59.     Shortly after that conversation, some employees were given their W2 statements for 2020.

60.     W2 forms for the aforementioned year reflect that these employees had Covid-19 Pay as part of their taxable income.

61.     The employees who received their W2 forms expressed outrage at paying excessive taxes for the year.

62.     The employees who had not yet received their W2 forms demanded them, but Morgan did not deliver all the W2 forms until March 2021.

**Plaintiff Jazmin Witherspoon**

63.     Plaintiff Jazmin Witherspoon began her employment at the Lonesome Dove as a Waitress in June 2020.

64.     On January 28, 2021 she contracted Covid-19 and was forced to take three (3) weeks off work.

65.     Morgan told Witherspoon that she would not be receiving any paid time off and that the benefits would "expire in three days," so she would not get much money anyway.

66.     Witherspoon then pressed Morgan to give her the Covid-19 Pay from the previous year as the company had claimed it on her behalf yet she never had Covid-19.

67.     Notably, the Lonesome Dove claims to have paid Witherspoon over one thousand (1000) dollars in 2020 as Covid-19 Pay.

68.     Witherspoon never received the Covid-19 pay, but was given, after consistently complaining to Morgan, a few hundred dollars in what Longmire recognized as "hush money."

69.     In an email, Morgan told Witherspoon that should could only give her 3 days of pay at her hourly rate and if Morgan were "able to pay [Witherspoon] any portion, [she] of course will."

70.     Morgan did not, however, offer to pay the claimed Covid-19 Pay.

71.     Witherspoon had not, just as the Plaintiffs and other employees had not, been given the Covid-19 Pay claimed on her behalf.

**Plaintiff Paul Craig Worrall**

72.     Plaintiff Paul Craig Worrall began his employment with River Shack on September 9, 2020.

73.     Worrall never contracted Covid-19 in 2020.

74.     In late December 2020, River Shack claimed to the IRS that it had paid him Covid-19 Pay.

75.     Worrall never received that Covid-19 Pay.

76.     On January 22, 2021, Worrall received a text message from Morgan asking how Worrall's wife was doing as she had heard from Terry Ward, Chief Operating Officer at Love Style, that Worrall's wife had been exposed to COVID.

77.     That same day, Morgan sent out an email to staff stating that anyone who tests positive for COVID and isolates themselves at home would not receive pay.

78.     On or about January 22, 2021, Worrall received his 2020 W2 tax form for his work at River Shack.  Upon examination, however, Worrall noticed that Respondents claimed his Covid-19 Pay as if he had taken leave for Covid-19 related reasons, which he had not.

79.     Worrall brought the fraudulent claim to the attention of Chris Heisler, Director of Operations for Love Style, who told Worrall any issues around Covid-19 Pay was "before his time."

80.     Later, in March 2021, when Worrall did contract Covid-19, River Shack and Love Style refused to pay him the Covid-19 Pay claimed for him in December 2020.

**Plaintiff Collin Ginebaugh**

81.     Plaintiff Collin Ginebaugh began his employment at the Lonesome Dove restaurant on September 29, 2020.

82.     Ginebaugh was a general manager, certified sommelier, and head bartender.

83.     In December 2020, Ginebaugh noticed irregularities in his pay stubs and Paylocity account.

84.     He later received his W2 in January 2021, which reflected $2113.83 in Covid-19 Pay.

85.     Ginebaugh further inspected his pay stubs and Paylocity account and realized that Love Style, likely through Morgan in her role as payroll manager, manipulated and forged his hours.

86.     Love Style had manipulated the pay stubs to reflect over eighty (80) hours worked in one week.  Ginebaugh neither worked eighty (80) hours nor was he paid for that amount.

87.     In forging his hours, Love Style was able to "show" that Ginebaugh worked in excess of what he actually worked and was, therefore, able to hide the Covid-19 Pay claims.

88.     Ginebaugh did not work as many hours as Love Style purportedly paid him for from December 2020 to January 2021 and he was not actually paid the amount indicated in his pay stubs.

89.     Rather, Love Style's actions were a poor attempt at forging Ginebaugh's hours in an effort to hide the fact that they were defrauding him and the IRS.

**Plaintiff Kessyn Alan**

90.     Plaintiff Kessyn Alan began his employment at the Lonesome Dove on October 23, 2019.

91.     On December 24, 2020, Alan received his direct deposit voucher for his time worked from December 9, 2020 to December 22, 2020.

92.     On it, his year-to-date section reflected the $2,025.02 in Covid-19 Pay.

93.     Alan never received this money before this direct deposit voucher and the voucher only reflected $1,618.68 in earnings for the two weeks of December 9, 2020 to December 22, 2020.

94.     On January 31, 2021 Alan received his W2 Form which reflected that he had 'earned' the Covid-19 Pay and was, therefore, taxed on it.

95.     He never received any money related to the Covid-19 Pay.

## CLAIMS

### FIRST CLAIM
### Filing of Fraudulent Information Return 26 U.S.C. § 7434(a)

96.     Plaintiffs and Class Members hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 95 with the same force as though separately alleged herein.

97.     "If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."  26 U.S.C. § 7434 (a).

98.     The W2 Forms given to the Plaintiffs are "information returns" under 26 U.S.C. § 7434 (f).

99.     "Any action brought under subsection [26 U.S.C. § 7434 (a)], upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the greater of $5,000 or the sum of — (1) any actual damages sustained by the plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing), (2) the costs of the action, and (3) in the court's discretion, reasonable attorneys' fees."  26 U.S.C. § 7434 (b).

100.     Defendants filed fraudulent information returns with respect to payments purported to be made to the Class Members.

101.     Class Members suffered damages, including, but not limited to, an increased tax liability.

102.     As a direct and proximate consequence of Defendants' conduct, Plaintiffs, and Class Members, have suffered, and continue to suffer, substantial damages, all in amounts to be determined at trial.

103.     Defendants' conduct toward Plaintiffs and Class Members was willful, malicious, and in reckless disregard of Plaintiffs' and Class Members protected rights.  Accordingly, Plaintiffs and Class Members seek an award of punitive damages against Defendants.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests the following relief:

(A)     an order certifying the proposed Class herein under Rule 23 and appointing

Plaintiffs and their undersigned counsel of record to represent same;

(B)     the creation of a common fund available to provide notice of and remedy

Defendants' violations;

(C)     statutory and punitive damages;

(D)     attorneys' fees, expenses and costs;

(E)     pre-judgment and post-judgment interest as provided by law; and

(F)     such other relief the Court does deem just, equitable, and proper.


Dated: Dallas, Texas
       October 20, 2021


                                        **THE HARMAN FIRM, LLP**


                                 By:    _____
                                        Walker G. Harman, Jr. [WH-8044]
                                        *Attorney for Plaintiff*
                                        244 Fifth Ave., Suite H211
                                        New York, NY 10001
                                        (646) 248-2288
                                        wharman@theharmanfirm.com